IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

VANCE WHITE,                          )
                                      )
                    Plaintiff,        )
                                      )
vs.                                   )    Case No.   14-cv-0092-MJR-SCW
                                      )
MARC HODGE AND                        )
BETH TREDWAY,                         )
                                      )
                    Defendants.       )

## MEMORANDUM AND ORDER

**REAGAN, Chief Judge:**

### A.   INTRODUCTION

Currently incarcerated at Metropolitan Correctional Center, Vance White (Plaintiff) filed suit in this Court under 42 U.S.C. 1983 in January 2014.   The complaint alleged that two officials at Lawrence Correctional Center, Marc Hodge and Beth Tredway, violated Plaintiff's federally secured constitutional rights by interfering with his access to the courts and by enforcing a policy which denied him a prison job on the basis of his sexual orientation.   On threshold review under 28 U.S.C. 1915A, the undersigned District Judge dismissed the court access claim but concluded that the complaint articulated a cognizable claim for violation of Plaintiff's rights under the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution.   Hodge and Tredway (collectively, Defendants) have moved for summary judgment on the ground that Plaintiff failed to exhaust his administrative remedies before filing this suit. Defendant's motion was filed with supporting memorandum (Docs. 25, 26), and Plaintiff

responded in opposition (Doc. 28).   For the reasons stated below, the Court **DENIES** Defendants' motion for summary judgment, finding that Plaintiff did all he could to exhaust his administrative remedies prior to filing suit.

      **B.**   <u>FACTUAL BACKGROUND</u>

Plaintiff filed this § 1983 lawsuit alleging violation of his equal protection rights while incarcerated at Lawrence Correctional Center, within the Illinois Department of Corrections.   As narrowed by the Court's Order on threshold review, Plaintiff alleges that he is an openly gay inmate who in 2007 was classified as "vulnerable" (Doc. 7, p. 1-2).   Plaintiff alleges that on May 16, 2013, he applied for a job and was denied the position because he did not satisfy the "criteria" for job placement (*id*., p. 2).   Plaintiff submitted a second job request on May 17, 2013 and also requested the criteria for the job.   He did not receive a response on this request; he asked Counselor McDonald for a status on his request (*id*.).   McDonald allegedly told Plaintiff that while his request was still pending it would most likely be denied because of his "vulnerable" status, since vulnerable inmates cannot obtain jobs (*id*.).   On July 11, 2013, Plaintiff learned that his job request was denied because of his "vulnerable" status.   Plaintiff alleges that the policy which prohibits vulnerable inmates from obtaining jobs at Lawrence is discriminatory, because inmates with such a status are overwhelmingly openly gay.   Thus, Plaintiff alleges the policy prevents homosexuals from getting prison jobs (*id*.).

In response to Plaintiff's January 27, 2014 complaint herein, Defendants filed the pending summary judgment motion, asserting that Plaintiff did not exhaust his

administrative remedies prior to filing suit and that Plaintiff failed to properly identify Defendants Hodge and Tredway in his grievance.

Plaintiff filed a grievance on July 15, 2013 regarding the denial of his job request (Doc. 26-3, p. 1).   The grievance alleged that he applied for a job and that Counselor McDonald responded that due to Plaintiff's current "vote sheet" criteria, he was not eligible for a job (*id*.).   Plaintiff asked McDonald to specify as to why he was ineligible but he did not (*id*., p. 1-2).   Plaintiff indicated that he believed he was denied a job due to his being a homosexual with a "vulnerable" status (*id*.).   Plaintiff requested to learn the reason for his job denial and the identity of the person who denied Plaintiff's job request (*id*.).   He also asked to be given a job assignment (*id*.).

Plaintiff's grievance was received by his counselor on July 17, 2013 (Doc. 26-3, p. 1).   His counselor denied the grievance, noting that Plaintiff was denied a job due to the criteria that was set forth by the administration regarding job eligibility (*id*.).   The counselor noted that Plaintiff was not eligible for a job because of his "vulnerable" status (*id*.).   The counselor's response is dated July 17, 2013 (*id*.).

Plaintiff next submitted his grievance to the grievance officer on July 24, 2013 (Doc. 26-3, p. 3).   The grievance officer did not review Plaintiff's grievance until February 20, 2014 (*id*.).   At that time, the grievance officer denied Plaintiff's grievance (*id*.).   The chief administrative officer concurred with the decision on March 3, 2014 (*id*.).   Plaintiff indicates in his responsive brief that he received the grievance back from the chief administrative officer on March 5, 2014 (Doc. 28, p. 3).

Plaintiff submitted an *emergency* grievance regarding the status of his motion on November 14, 2013 (Doc. 1, p. 16-17).   Plaintiff stated therein that he had submitted his grievance and had been waiting for a response but had never received one (*id*.). Plaintiff also restated the claims which were the basis of his July 15, 2013 grievance. Warden Marc Hodge reviewed the grievance on November 6, 2013 and marked that it was not an emergency (*id*.).   It was returned to Plaintiff with an instruction to submit the grievance in the normal manner (*id*.).   There is no indication that Plaintiff submitted this grievance to his counselor or grievance officer, or that he appealed this grievance to the ARB.   Plaintiff filed his complaint in this Court on January 27, 2014.

### C.   APPLICABLE LEGAL STANDARDS

→   *Summary Judgment Standard*

Summary judgment is proper only "if the admissible evidence considered as a whole shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." **Dynegy Mktg. & Trade v. Multi Corp., 648 F.3d 506, 517 (7th Cir. 2011) (internal quotation marks omitted),** *citing* **FED. R. CIV. P. 56(a).   See also Ruffin-Thompkins v. Experian Info. Solutions, Inc., 422 F.3d 603, 607 (7th Cir. 2005).**

The party seeking summary judgment bears the initial burden of demonstrating—based on the pleadings, affidavits, and/or information obtained via discovery—the lack of any genuine issue of material fact.   **Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).**   After a properly supported motion for summary judgment is

made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting FED. R. CIV. P. 56(e)(2)).

A fact is material if it is outcome determinative under applicable law. *Anderson*, 477 U.S. at 248; *Ballance v. City of Springfield, Ill. Police Dep't*, 424 F.3d 614, 616 (7th Cir. 2005); *Hottenroth v. Village of Slinger*, 388 F.3d 1015, 1027 (7th Cir. 2004). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. To survive summary judgment, the nonmovant must present more than a "mere scintilla" of evidence showing the existence of a genuine issue of material fact. *Chaib v. Indiana*, 744 F.3d 974, 981 (7th Cir.), *cert. denied*, 135 S. Ct. 159 (2014). *See also Zuppardi v. Wal-Mart Stores, Inc.*, 770 F.3d 644, 650 (7th Cir. 2014). Stated another way, a scintilla of evidence supporting the nonmovant's position is not enough; "there must be evidence on which the jury could reasonably find for the non-moving party." *Harris N.A. v. Hershey*, 711 F.3d 794, 798 (7th Cir. 2013).

On summary judgment, the Court considers the facts in the light most favorable to the non-movant (here, Plaintiff). *Srail v. Village of Lisle*, 588 F.3d 940, 948 (7th Cir. 2009). The Court adopts reasonable inferences, and resolves doubts, in the nonmovant's favor. *Id.; Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). Summary judgment is "not an appropriate occasion for weighing the evidence" and should not be granted if the evidence before the court

supports alternate inferences. *Dowden v. Polymer Raymond, Inc.,* **966 F.2d 1206, 1207-08 (7th Cir. 1992). *See also Anderer v. Jones,* 385 F.3d 1043, 1064 (7th Cir. 2004),** *cert. denied,* **546 U.S. 1032 (2005).**

→  *Exhaustion Under the PLRA*

Lawsuits brought by prisoners are governed by the Prison Litigation Reform Act (PLRA), 42 U.S.C 1997e. The PLRA requires that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until … administrative remedies as are available are exhausted." **42 U.S.C. 1997e(a).**

Exhaustion is a condition precedent to suit in federal court, so the inmate must exhaust before he commences his federal litigation; he cannot exhaust *while* his lawsuit is pending. *See Perez v. Wisconsin Department of Corr.,* **182 F.3d 532, 535 (7th Cir. 1999);** *Dixon v. Page,* **291 F.3d 485, 488 (7th Cir. 2002).** If the inmate fails to exhaust before filing suit in federal court, the district court must dismiss the suit. *See Jones v. Bock,* **549 U.S. 199, 223 (2007); *Burrell v. Powers,* 431 F.3d 282, 284-85 (7th Cir. 2005).[1]**

The United States Court of Appeals for the Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler,* **438 F.3d 804, 809 (7th Cir. 2006) ('This circuit has taken a strict compliance approach to exhaustion").**

---

[1]    Although *dismissal* is the procedural step the district court takes if a plaintiff failed to exhaust prior to filing suit, the issue of exhaustion most often is raised via summary judgment motion, so that the Court can consider evidence "outside the pleadings," such as affidavits, grievances, responses, appeals, and related documentation. *See* Fed. R. Civ. P. **12(d).**

The exhaustion requirement of the PLRA is dependent upon the procedures established by the state in which the prison is located. ***Jones*, 549 U.S. at 218.** Unexhausted claims may not be brought to court. ***Jones*, 549 U.S. at 211, *citing Porter v. Nussell*, 534 U.S. 516, 524 (2002).**

The Seventh Circuit requires strict compliance as to exhaustion. "Unless a prisoner completes the administrative process by following rules the state has established for that process, exhaustion has not occurred." ***Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002).** This includes the filing of "complaints and appeals in the place, and at the time, the prison's rules require." ***Id.* at 1025.** If the prisoner fails to comply with the established procedures, including time restraints, the court may not consider the claims. ***Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011).**

The purpose of the exhaustion requirement is two-fold. First, it gives the prison officials the chance to address the prisoner's claims internally, before any litigation becomes necessary. ***Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006); *Woodford v. Ngo*, 548 U.S. 81, 89-90 (2006).** Second, it "seeks to reduce the quantity and improve the quality of prisoner suits." ***Porter*, 534 U.S. at 524. *See also Booth v. Churner*, 532 U.S. 731, 737 (2001) ( PLRA's requirement will help "filter out some frivolous claims.").**

Because exhaustion is a prerequisite to filing a suit, a prisoner must wait to commence litigation until he has completed the established process and may not file in anticipation of administrative remedies soon being exhausted. ***Perez*, 182 F.3d at 535, *citing* 42 U.S.C 1997e(a); *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004).** A suit filed

prior to exhaustion of available remedies will be dismissed even if the remedies become exhausted *while* the suit is pending.   ***Perez*, 182 F.3d at 535.**

The exhaustion requirement is an affirmative defense, on which defendants bear the burden of proof.   ***Pavey*, 663 F.3d at 903.**   The Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge.   ***Pavey v. Conley*, 544 F.3d 739, 740-41 (7th Cir. 2008).**   Where failure to exhaust administrative remedies has been raised as an affirmative defense (i.e., exhaustion is contested), the district court should follow this recommended sequence (***id.*, 544 F.3d at 742**):

> (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate.   (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over.   (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

Here, Defendants raised the affirmative defense of exhaustion in their answer (Doc. 14, p. 5) and also moved for summary judgment on this ground (Doc. 25).

→    *Exhaustion under Illinois Law*

As an inmate confined within the Illinois Department of Corrections (IDOC), Plaintiff was required to follow the regulations contained in the IDOC's Grievance Procedures for Offenders to properly exhaust his claims.   **20 Ill. Admin. Code 504.800,** *et seq.*   The grievance procedures first require inmates to speak with the counselor about their complaint.   **20 Ill. Admin. Code 504.810(a).**   Then, if the counselor does not resolve the issue, the inmate must file a grievance form directed to the Grievance Officer within 60 days of the incident.   *Id.*   The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is subject of or who is otherwise involved in the complaint.   The provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

**20 Ill. Admin. Code 504.810(b).**

"The Grievance Officer shall [then] consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer...[who]shall advise the offender of the decision in writing within 2 months after receipt of the written grievance, where reasonably feasible under the circumstances." **20 Ill. Admin. Code 504.830(d).**   If the inmate is not satisfied with the Chief Administrative Officer's response, he or she can file an appeal with the Director through the Administrative Review Board (ARB).

More specifically:  "If after receiving the response of the Chief Administrative Officer, the offender still feels that the problem, complaint or grievance has not been

resolved to his or her satisfaction, he or she may appeal in writing to the Director within 30 days after the date of the decision.   Copies of the Grievance Officer's report and the Chief Administrative Officer's decision should be attached."   **20 Ill. Admin. Code 504.850(a).**

"The Administrative Review Board shall submit to the Director a written report of its findings and recommendations."   **20 Ill. Admin. Code 504.850(e).**   "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, where reasonably feasible under the circumstances.   The offender shall be sent a copy of the Director's decision."   **20 Ill. Admin. Code 504.850(f).**

The grievance procedures also allow for an inmate to file an emergency grievance. To file an emergency grievance, the inmate must forward the grievance directly to the Chief Administrative Officer (CAO) who may determine that "there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus the grievance should be handled on an emergency basis.   **20 Ill. Admin. Code 504.840(a).**   If an inmate forwards the grievance to the CAO as an emergency grievance, the CAO "shall expedite processing of the grievance and respond to the offender" indicating to him which course he has decided is necessary after reading the grievance. **20 Ill. Admin. Code 504.840(b).**   Once the CAO has informed the inmate of his decision, the inmate may then appeal that decision to the ARB on an expedited basis.   **20 Ill. Admin. Code 504.850(g).**

D.   **ANALYSIS**

Defendants argue that Plaintiff failed to exhaust his administrative remedies because he filed his complaint prior to fully pursuing his grievance through the administrative process and because he failed to properly identify Defendants in his grievance.   As stated above, exhaustion is a precondition to filing suit, and a prisoner may not file suit in anticipation that his administrative remedies will soon become exhausted.   *Ford*, **362 F.3d at 398;** *Perez*, **182 F.3d at 535.**   However, if an inmate never receives a response to his grievance, then his attempts at exhaustion are deemed thwarted, and the inmate may proceed with his lawsuit.   ***See Walker v. Sheahan*, 526 F.3d 973, 979 (7th Cir. 2000) (an inmate is not required to appeal his grievance if he submits the grievance to the proper authorities and never receives a response);** *Dole*, **438 F.3d at 809 (a remedy can be unavailable to a prisoner if the prison does not respond to the grievance or uses misconduct to prevent a prisoner from exhausting his resources);** *Lewis v. Washington*, **300 F.3d 829, 833 (7th Cir. 2002) (refusing to interpret the PLRA to allow prison officials to exploit the exhaustion requirement by indefinitely delaying grievance responses).**

In the case at bar, the Court finds that Plaintiff properly exhausted his administrative remedies by waiting an adequate amount of time for a response to his grievance before filing his § 1983 complaint.   On July 15, 2013 Plaintiff filed a grievance presenting his issue about job denial (Doc. 26-3).   The response from Counselor Reis dated July 17, 2013 stated:   "Due to the criteria set forth by the Administration regarding

job eligibility, you are not eligible for any jobs at all because of your status as 'vulnerable.'"

Plaintiff submitted the grievance to the grievance officer on July 24, 2013. The regulations provide that the grievance officer must submit his recommendations to the chief administrative officer who "shall advise the offender of the decision in writing within 2 months after receipt of the written grievance, where reasonably feasible under the circumstances." **20 Ill. Admin. Code 504.830(d).** Here, the chief administrative officer did not respond to the grievance until March 3, 2014, well over the two months allotted to respond. Thus, the Court finds that prison officials did not respond to the grievance within the time period specified in the regulations and that the officials unduly delayed the grievance process. Defendants have not offered any explanation for the delay that would fall within the exception to the regulation. Nothing in their brief suggests that a response was not "reasonably feasible" within the two months after they received the grievance on July 24, 2013.

Plaintiff waited a reasonable amount of time before filing his complaint. He did not receive the grievance back until almost eight months after first submitting his grievance. Furthermore, Plaintiff sought to locate his grievance and learn the status of the administration's review of the grievance when he submitted his emergency grievance in November 2013, plainly noting that he had not yet received a response. The warden deemed that grievance not an emergency. Plaintiff's grievance still was not ruled on for another four months.

The undersigned concludes that Plaintiff gave the prison administration a reasonable opportunity to respond to his grievance before filing his complaint.  The grievance officer and CAO failed to respond to the grievance within the two-month time period, and they did not provide any indication to Plaintiff that his grievance was still being considered or had even been received by the grievance office.   Plaintiff – who had no indication that the grievance would be ruled on – was justified in filing his complaint.  Because Plaintiff gave the prison administration a fair opportunity to review his grievance, *see Pavey*, **663 F.3d at 905-06**, and they did not respond in a timely fashion, the undersigned finds that Plaintiff exhausted his grievance.

Defendants also argue that Plaintiff did not properly identify Hodge and Tredway in his July 15, 2013 grievance.   They note that Plaintiff only named counselors McDonald and Reis as the individuals who denied his grievance and did not indicate that Hodge and Tredway were involved in any way in the process of denying Plaintiff a job.   Plaintiff points out that he was not grieving McDonald and Reis' actions but rather the *policy*, which counselor Reis acknowledged in his response to the grievance when he noted Plaintiff's job request was denied due to criteria set forth by the administration.

Illinois' Administrative Code requires that an inmate's grievance contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is subject of or who is otherwise involved in the complaint.   The provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include

as much descriptive information about the individual as possible.   **20 Ill. Admin. Code 504.810(a)(b).**   The Seventh Circuit has found that a grievance which does not adequately name or describe an individual can serve its purpose and be exhausted when "prison officials address an inmate's grievance on the merits without rejecting it on procedural grounds." ***Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011).**   This is especially true in light of the fact that the IDOC's grievance form does not inform inmates that they are to provide the name or description of the subject person, and instead merely requires that an inmate provide a "brief summary" of the grieved issues. ***Id.***; ***see also Jackson v. Shepherd*, 2014 WL 465806, at \*1 n.1 (7th Cir. Feb. 6, 2014).**

Moreover, the Seventh Circuit has held that an inmate is required to provide enough information to serve a grievance's function of giving "prison officials a fair opportunity to address [an inmate's] complaints." ***Maddox,* 655 F.3d at 722.**   When prison officials have been afforded an opportunity to address an inmate's claims internally prior to federal litigation, the purpose of exhaustion has been met, and the prisoner has properly exhausted his available remedies.   ***Kaba,* 458 F.3d at 684.**

In the case *sub judice*, the Court finds that Plaintiff properly exhausted his grievance.   Even though he did not name Hodge and Tredway in his grievance, the grievance alleges that the policy behind the denial of his job was inappropriate as he believed he was denied solely on his sexual orientation.   The grievance clearly grieves the policy.   Additionally, Counselor Reis in his response stated that the criteria which led to Plaintiff's denial of a job were set forth by "the Administration" (Doc. 26-3, p. 1),

which indicates that prison officials knew that Plaintiff was grieving an administrative policy.   And Plaintiff's complaint alleges that Hodge and Tredway were the administrative officials in charge of that policy.   Therefore, the Court finds that Plaintiff properly grieved the administrative policy which put prison officials on notice, even without naming the administrative officials behind the policy.

E.    CONCLUSION

Accordingly, the Court **DENIES** Defendants' motion for summary judgment (Doc. 25), having found that Plaintiff properly filed his complaint after waiting an appropriate time for the prison administration to review his grievance.

IT IS SO ORDERED.

DATED April 24, 2015.

*s/ Michael J. Reagan*
Michael J. Reagan
United States District Judge