IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| VANCE WHITE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 14-cv-0092-MJR-SCW |
| | ) |
| MARC HODGE | ) |
| and BETH TREDWAY, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**REAGAN, Chief Judge:**

**I.    INTRODUCTION**

Recently released from prison, Vance White (Plaintiff) filed the above-captioned suit in this Court under 42 U.S.C. 1983, while in the custody of the Illinois Department of Corrections (IDOC). The complaint alleged that the warden and the assistant warden of programs at Lawrence Correctional Center (Marc Hodge and Beth Tredway, respectively) violated Plaintiff's federally-secured constitutional right to equal protection. More specifically, Plaintiff alleged that his rights were violated by Lawrence's policy prohibiting jobs from being assigned to inmates classified as "vulnerable" and by denying him access to the courts. Only the first of these (the equal protection claim) survived threshold review under 28 U.S.C. 1915A.

The case comes now before the Court on the joint motion for summary judgment and supporting brief filed by Defendants Hodge and Tredway (Docs. 42-43). Plaintiff

filed a response in opposition to the motion (Doc. 46), and Defendants replied (Doc. 47). As described below, the Court grants Defendants' motion.

## II. SUMMARY OF KEY FACTS AND ALLEGATIONS

Plaintiff's equal protection claim arises from events which occurred while he was confined at Lawrence Correctional Center. Plaintiff was housed at Lawrence from approximately March 2013 until July 2014 (Doc. 43-1, p. 2). Plaintiff's complaint alleges that his equal protection rights were violated because Defendants denied his job requests due to his "vulnerable" inmate status. In his deposition taken in connection with this case, Plaintiff testified that inmates with vulnerable status were those who prison authorities deemed needed special consideration regarding housing and interactions with other inmates, because they were susceptible to sexual violence and assault (Doc. 43-1, p. 4). Plaintiff testified that he was designated "vulnerable" in 2007 while incarcerated at Shawnee Correctional Center, after someone touched him inappropriately while he was sleeping, he reported that (and the fact he was gay) to prison authorities, and they moved him and classified him as "vulnerable" (*Id*. at p. 4, 6).

Plaintiff concedes that not every gay inmate is classified as vulnerable, and that when an inmate was asked whether he had been sexually assaulted by another individual, the answer to that question could form the basis of a vulnerable status designation (*Id*. at p. 4-5). Plaintiff further testified that inmates who were openly gay, inmates who identified themselves as gay to the administration, and transgender inmates were classified as vulnerable (*Id*. at p. 5). In an affidavit submitted with his

2

response to the pending motion, Plaintiff testified that the majority of inmates who are considered vulnerable are openly gay or transgender (Doc. 46, p. 13).

While at Lawrence Correctional Center in 2013, Plaintiff applied for a job as a teacher's clerk (Doc. 43-1, p. 6, 7). He also applied for a job as a housing unit porter or janitor (*Id*. at p. 6; 43-1, p. 20). His job requests were denied, because he was not eligible based on his vulnerable designation (Doc. 43-1, p. 18, 19-20, 7). These positions required that Plaintiff not have a vulnerable status (Doc. 43-1, p. 29-31, 7-8). Plaintiff had jobs at other institutions, and "vulnerables" at other institutions could hold some jobs, whereas all of the jobs offered at *Lawrence* require that an inmate not be labeled as vulnerable (*Id*. at p. 8, 13, 29-31). Plaintiff asserts that he was denied jobs at Lawrence based on his vulnerable status. He testified that although his claim "stems from" his sexual orientation, it focuses on his classification as a vulnerable inmate, not his orientation (Doc. 43-1, p. 13). The record reflects that Defendants and other staff at Lawrence refused to approve Plaintiff for a job due to his vulnerable status (*Id.,* p. 18).

According to Russell Goins, Assistant Warden of Operations at Lawrence, mental health professionals make the determination whether an inmate receives a status of vulnerable (Doc. 43-1, p. 33). Inmates receive this status when they are deemed an increased risk for being physically or sexually assaulted (*Id*.). Inmate job assignments require that an inmate move more freely (sometimes out of sight of correctional staff) and have more contact with other inmates, so inmates holding jobs face an increased risk of assault from other inmates (*Id*. at p. 33-34). Because of this increased risk, says Goins,

Lawrence prevents inmates with vulnerable status from receiving job assignments in order to protect them from possible assault (*Id*. at p. 34). Likewise, inmates with a *predator* status are prevented from receiving job assignments, to *decrease* the risk of a predator inmate from assaulting another inmate (*Id*.). Plaintiff argues, however, that not all inmate jobs allow free movement, and even inmates without jobs are out of the direct sight and supervision of staff at various times throughout the day (Doc. 46, p. 3).

III. **APPLICABLE LEGAL STANDARDS**

    A. <u>**Summary Judgment Motions**</u>

Summary judgment is proper only if the admissible evidence considered as a whole shows there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. ***Dynegy Mktg. & Trade v. Multi Corp.*, 648 F.3d 506, 517 (7th Cir. 2011),** *citing* **FED. R. CIV. P. 56(a).** The party seeking summary judgment bears the initial burden of showing -- based on the pleadings, affidavits, and/or information obtained via discovery -- the lack of any genuine issue of material fact. ***Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).** After a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." ***Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986),** *quoting* **FED R. CIV. P. 56(e)(2).**

A fact is material if it is outcome determinative under applicable law. ***Anderson*, 477 U.S. at 248; *Ballance v. City of Springfield, Ill. Police Dep't,* 424 F.3d 614, 616 (7th Cir. 2005); *Hottenroth v. Village of Slinger*, 388 F.3d 1015, 1027 (7th Cir. 2004).** A

4

genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, **477 U.S. at 248.** "A mere scintilla of evidence in support of the nonmoving party's position is not sufficient; there must be evidence on which the jury could reasonably find for the non-moving party." *Harris N.A. v. Hershey*, **711 F.3d 794, 798 (7th Cir. 2013).**

On summary judgment, the district court construes the facts and draws the reasonable inferences in favor of the non-moving party – here, Plaintiff. *Cole v. Board of Trustees of Northern Illinois University*, **838 F.3d 888, 895 (7th Cir. 2016).** However, the court does not draw every *conceivable* inference from the record, "and mere speculation or conjecture will not defeat a summary judgment motion." *Rockwell Automation, Inc. v. National Union Fire Ins. Co.*, **544 F.3d 752, 757 (7th Cir. 2008) (emphasis added),** *quoting McCoy v. Harrison,* **341 F.3d 600, 604 (7th Cir. 2003).**

    B.    <u>Equal Protection Claims</u>

The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution provides that a state shall not "deny to any person within its jurisdiction equal protection of the laws." **U.S. CONST. AMEND. XIV.** This clause protects persons from disparate treatment based on membership in a protected class. *Greer v. Amesqua*, **212 F.3d 358, 370 (7th Cir. 2000).** When a regulation (or policy or law) draws a distinction that is based on an individual's membership in a suspect class (like race or national origin) or denies a fundamental right (like freedom of speech or religion), then "the government's justification for the regulation must satisfy the strict scrutiny test."

*Srail v. Village of Lisle, Ill.*, **588 F.3d 940, 943 (7th Cir. 2009)**, *citing Martin v. Shawano-Gresham Sch. Dist.*, **295 F.3d 701, 712 (7th Cir. 2002);** *Vision Church v. Village of Long Grove*, **468 F.3d 975, 1000 (7th Cir. 2006)**, *cert. denied,* **552 U.S. 940 (2007).**

In the absence of a fundamental right or a suspect class, the standard is, instead, rational basis. ***Id., citing Vision Church*, 468 F.3d at 1000-01.** As the Seventh Circuit summarized recently in the prison context**:**

> Where disparate treatment is not based on a suspect class and does not affect a fundamental right, prison administrators may treat inmates differently as long as the unequal treatment is rationally related to a legitimate penological interest. *See City of Cleburne, Tex. v. Cleburne Living Ctr., Inc.,* 473 U.S. 432, 439–42, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985); *Johnson v. Daley,* 339 F.3d 582, 585–86 (7th Cir. 2003) (en banc); *May v. Sheahan,* 226 F.3d 876, 882 (7th Cir. 2000); *Stanley v. Litscher,* 213 F.3d 340, 342 (7th Cir. 2000). Prison classifications are presumed to be rational and will be upheld if any justification for them can be conceived. *See Ind. Petroleum Marketers & Convenience Store Ass'n v. Cook,* 808 F.3d 318, 322 (7th Cir. 2015); *Johnson,* 339 F.3d at 586.

*Flynn v. Thatcher,* **819 F.3d 990, 991 (7th Cir. 2016).**[1]

The Equal Protection Clause protects against discrimination based on sexual orientation. ***Hughes v. Farris*, 809 F.3d 330, 334 (7th Cir. 2015),** *citing Baskin v. Bogan,* **766 F.3d 648, 654-55 (7th Cir. 2014).** But here (judging from Plaintiff's deposition testimony, affidavit, and other material in the record), Plaintiff's claim is best construed as an equal protection claim based on the denial of jobs to a class of inmates designated as "vulnerable." Many in that class are gay, but Plaintiff is not presenting a claim that

---

[1] Prisoners are not a suspect class. ***See Johnson v. Daley*, 339 F.3d 582, 585– 86 (7th Cir.2003) (en banc);** *United States v. Vahovick,* **160 F.3d 395, 398 (7th Cir.1998).**

6

he was discriminated against just *because he is gay*. Rather, he contends that the policy of denying jobs to vulnerable-designated inmates contravenes the Equal Protection Clause.

To establish a prima facie case of discrimination under the Equal Protection Clause, a plaintiff must show that he "is a member of a protected class," that he "is otherwise similarly situated to members of the unprotected class," and that he "was treated differently from members of the unprotected class." *McNabola v. Chicago Transit Auth.*, **10 F.3d 501, 513 (7th Cir. 1993),** *quoting McMillian v. Svetanoff*, **878 F.2d 186, 189 (7th Cir. 1989).** As applied to prisoners, the Equal Protection Clause "requires inmates to be treated equally, unless unequal treatment bears a rational relation to a legitimate penal interest." *May v. Sheahan*, **226 F.3d 876, 882 (7th Cir. 2000),** *citing Hudson v. Palmer*, **468 U.S. 517, 523 (1984), and** *Williams v. Lane*, **851 F.2d 867, 881 (7th Cir. 1988).**

Again, assuming a difference in treatment is *not* based on a suspect class and does not impinge a fundamental right, prison administrators can treat inmates differently, as long as the unequal treatment is rationally related to a legitimate penological interest. Indeed, a presumption of rationality applies, and the classification will be set aside only if no ground can be conceived to justify it. *See Ind. Petroleum Marketers & Convenience Store Ass'n v. Cook*, **808 F.3d 318, 322 (7th Cir. 2015);** *Johnson*, **339 F.3d at 586.** So, for instance, a rewards program for inmates with an infraction-free record (affording inmates accepted into the "Honor Program" certain privileges) did not violate equal protection, since there are "many rational reasons" to extend preferential

treatment to inmates with a history of good behavior (e.g., it encourages rehabilitation, institutional security, and the safety of staff and visitors). *Flynn,* **819 F.3d at 991-92.**

### C. Qualified Immunity Doctrine

Qualified immunity is an affirmative defense that shields government officials from liability for civil damages where their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald,* **457 U.S. 800, 818 (1982);** *Pearson v. Callahan,* **555 U.S. 223, 231 (2009);** *Denius v. Dunlap,* **209 F.3d 944, 950 (7th Cir. 2000).** The defense applies only to government officials who occupy positions with discretionary or policymaking authority and who are acting in their official capacities. *Harlow,* **457 U.S. at 818;** *Denius,* **209 F.3d at 950.**

In other words: "Qualified immunity safeguards "federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, *and* (2) that the right was 'clearly established' at the time of the challenged conduct." *Canen v. Chapman,* **-- F.3d --, 2017 WL 382329 (7th Cir. Jan. 27, 2017),** *quoting Ashcroft v. al-Kidd,* **563 U.S. 731, 735 (2011).** The doctrine protects an official from suit "when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." *Brosseau v. Haugen,* **543 U.S. 194, 198 (2004).** "Put simply, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Allin v. City of Springfield***, -- F.3d --, 2017 WL 108035, at \*3 (7th Cir. Jan. 11, 2017),**

*quoting Mullenix v. Luna,* -- U.S. --, 136 S. Ct. 305, 308, and *Malley v. Briggs,* **475 U.S. 335, 341 (1986).**

In examining a qualified immunity claim, a court must consider two questions: "(1) whether the facts, taken in the light most favorable to the plaintiff, make out a violation of a constitutional right, and (2) whether that constitutional right was clearly established at the time of the alleged violation." *Allin,* **2017 WL 108035, at \*3,** *quoting Gibbs v. Lomas,* **755 F.3d 529, 535 (7th Cir. 2014), and** *Williams v. City of Chicago,* **733 F.3d 749, 759 (7th Cir. 2013).** For the right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." That is, "any reasonable official would understand that his or her actions violate that right." *Allin,* **2017 WL 108035, at \*3;** *Canen,* **2017 WL 382329, at \*3.**[2] While it is often beneficial to first decide whether the plaintiff has shown a constitutional violation, a court has discretion to address the second question first in light of the circumstances of the case. *Pearson,* **555 U.S. at 236.**

IV.  ANALYSIS

Plaintiff first urges the Court to strike Defendants' motion, arguing that Defendants misled the Court by asserting in an earlier filing herein (a response to Plaintiff's motion for summary judgment) that there were justifications other than Plaintiff's vulnerable designation for Plaintiff not receiving a job. In their own

---

[2] Cleary established law should not be defined at a high level of generality. The clearly established law must be "particularized" to the facts of the individual case before the court. *White v. Pauly,* **-- U.S. --, 137 S. Ct. 548, 552 (2017).**

9

summary judgment motion, Defendants now assert that Plaintiff was denied a job based solely on his vulnerable status. Plaintiff believes Defendants should be equitably estopped from presenting this argument. The Court is not persuaded. Defendants have not improperly changed their position as Plaintiff argues. Defendants' motion focuses on whether denial of a job based on Plaintiff's status alone is constitutionally permissible, and they are allowed to choose what arguments they want to emphasize in their dispositive motion. The Court **DENIES** Plaintiff's motion to strike.

Next, the Court recognizes some confusion as to the precise basis of Plaintiff's claims. Plaintiff's complaint alleges that he was discriminated against because his status as "vulnerable" *and* as homosexual/gay. He alleges that the majority of vulnerables are gay, so the denial of jobs to vulnerables discriminates against gay inmates. However, in Plaintiff's deposition, he testified that he was designated as "vulnerable" because he reported being sexually assaulted by his cellmate in 2008 (*not* because he is gay). He also testified that his concern is not that all people classified as "vulnerable" are gay. Instead, he testified, the fact that his vulnerable designation makes him ineligible for jobs at Lawrence is unfair, because inmates deemed vulnerable at prisons other than Lawrence are allowed to hold jobs. In an affidavit, Plaintiff says he was discriminated against based on his "vulnerable" status *and* the fact that he was gay.

Thus, it is not entirely clear whether Plaintiff is alleging that his equal protection rights were violated because he is gay or because of his "vulnerable" status or both.

10

The best the Court can glean after careful review of the record, Plaintiff's claim is that his equal protection rights were violated by the denial of a job assignment based on Lawrence's policy prohibiting work assignments for inmates classified as or designated "vulnerable" (not that his rights were violated simply because he is gay).

Turning first to the claim that Plaintiff was denied a job improperly due to his "vulnerable" status, based on Plaintiff's testimony in his deposition and the exhibits presented in the record, the Court finds Defendants entitled to summary judgment, because there is a rational basis for the policy preventing inmates classified as vulnerable from holding jobs at Lawrence Correctional Center.

As stated above, Lawrence has a policy of keeping inmates deemed "vulnerable" from obtaining jobs at Lawrence. These inmates have been assessed by mental health professionals and found to be at an increased risk of being physically and sexually assaulted by other inmates, based on, according to Plaintiff, their prior experiences in the prison. Additionally, as attested in the sworn declaration provided by Lawrence's Assistant Warden of Operations, Russell Goins (Doc. 43-1), the jobs at Lawrence place inmates in positions where they are more likely to have contact with other inmates and limited supervision by staff.

Placing vulnerable inmates in jobs where they have increased contact with other inmates and have less supervision by staff puts those vulnerable inmates at additional risk of being physically and sexually assaulted, according to Goins. Thus, Lawrence prevents "vulnerable" inmates from having jobs in order to protect those inmates from

additional risk of assault. Such safety and security concerns plainly constitute a rational basis for the different treatment of those inmates labeled "vulnerable" at Lawrence.

In deciding to exclude this group of inmates from job eligibility, correctional officials at Lawrence could have rationally concluded that the exclusion was necessary to protect vulnerable inmates and prevent assaults. A prison policy need not fit perfectly with the valid objective. "Prison classifications are presumed to be rational and will be upheld if any justification for them can be conceived." *Flynn,* **819 F.3d 991.** Lawrence's policy (under which Plaintiff was treated differently from inmates not designated "vulnerable") was rationally related to a legitimate penological interest and did not violate the Equal Protection Clause.

While Plaintiff's complaint and deposition suggest that he believes he is being treated differently due to his "vulnerable" status, there is some indication that Plaintiff claims he is being treated different based on his sexual orientation. If Plaintiff's claim is construed that way (i.e., he was improperly denied a job based on the fact that he is gay), the Court finds that Defendants also are entitled to summary judgment on the basis of qualified immunity. As Defendants point out, there is no case law clearly establishing a constitutional violation when prison administrators deny an inmate a job based on his designation as vulnerable. And, as the Court explained in the threshold review Order herein (Doc. 7), the state of equal protection based on *sexual orientation* was not clearly set out at the time Plaintiff's claims arose. No cases at that time established vulnerable

inmates as a protected class subject to something other than rational basis scrutiny.

It is not even clear now whether disparate treatment on the basis of sexual orientation outside of the prison setting would receive heightened scrutiny as a suspect class or simply require a rational basis to be upheld. The Supreme Court has not specifically set forth the standard of review to apply to equal protection claims based on sexual orientation. *See United States v. Windsor*, --U.S.--, 133 S.Ct. 2675 (2013). And the Seventh Circuit has not yet expressly addressed which level of scrutiny applies to discrimination based on sexual orientation.[3]

While it appears from more recent circuit and district court opinions that classifications based on sexual orientation may be subject to some form of heightened scrutiny, *see, e.g., Baskin*, 766 F.3d at 654 (2014 case declining to decide whether such claims are subject to heightened scrutiny, as the Court found that the state's basis of discrimination irrational); *SmithKline Beecham Corp. v. Abbott Labs.*, 740 F.3d 471, 481-83 (9th Cir. 2014) (statutes that discriminate based on sexual orientation are subject to "heightened scrutiny"); *Wolf v. Walker*, 986 F. Supp. 2d 982 (W.D. Wis. June 6, 2014) (J., Crabb), what form that would take is not clear. Nor can this Court find that the standard or right was "clearly established" at the time of Plaintiff's alleged violation

---

[3] Earlier Seventh Circuit cases indicate that sexual orientation discrimination is *not* entitled to heightened scrutiny. *See, e.g., Schroeder v. Hamilton School District,* 282 F.3d 946, 950-51 (7th Cir. 2002) ("homosexuals do not enjoy any heightened protection under the Constitution"); *Nabozny v. Podlesny,* 92 F.3d 446 (7th Cir. 1996) (discrimination based on sexual orientation, as opposed to gender, is subject to only rational basis review). Those statements appear to be dicta or were in the military context, and those cases were decided before *Windsor,* but that was the law at the time of the challenged conduct herein.

13

(i.e., at the time of the challenged conduct).

Accordingly, the Court finds that Defendants are entitled to qualified immunity to the extent that Plaintiff was discriminated on the basis of his sexual orientation.

Finally, Plaintiff's complaint seeks injunctive relief – relief which is excluded from the reach of the qualified immunity defense. *Moss v. Martin*, **614 F.3d 707, 712-13 (7th Cir. 2010) ("qualified immunity defense protects government defendants from an action for money damages, but not from a suit on injunctive relief");** *Hannemann v. Southern Door County School Dist.*, **673 F.3d 746, 758 (7th Cir. 2012).** However, Plaintiff now has been released from state custody, so his request for injunctive relief is moot. *Koger v. Bryan*, **523 F.3d 789, 804 (7th Cir. 2008);** *Higgason v. Farley*, **83 F.3d 807, 812 (7th Cir. 1996),** *citing Moore v. Thieret*, **862 F.2d 148, 150 (7th Cir. 1988).**

## IV. CONCLUSION

Accordingly, the Court **GRANTS** Defendants' motion for summary judgment (Doc. 42)   No claims remain, and the Clerk of Court is **DIRECTED** to enter judgment in favor of Defendants Hodge and Tredway and against Plaintiff White.

**IT IS SO ORDERED**.

DATED: February 2, 2017.

*s/ Michael J. Reagan*
Michael J. Reagan
United States District Judge

14